## THE HAYTIAN REPUBLIC.

## UNITED STATES v. THE HAYTIAN REPUBLIC.

### (District Court, D. Oregon. August 8, 1893.)

### No. 3,403.

1. ADMIRALTY PLEADING—EXCEPTIONS TO LIBEL—WAIVER OF OBJECTIONS.
   Where, after the argument of exceptions to a libel, a brief is filed, in which, for the first time, the point is made that the facts set up in the exceptions cannot be thus raised, but are available only by answer, the court will consider the questions presented upon the assumption made by both parties in the argument, that such facts were properly presented, without determining the technical question of pleading.

2. ADMIRALTY PRACTICE — BREACH OF REVENUE LAWS — BUT ONE LIBEL FOR SEVERAL OFFENSES.
   The United States is entitled to but one decree of forfeiture against a vessel for several past violations of the revenue laws, and where a vessel has been once libeled for several such violations, and released on bond, she is not thereafter subject to a second seizure for alleged violations committed during the same period as those for which she has already been seized. The Langdon Cheves, 2 Mason, 59, distinguished.

3. SAME—AMENDMENT OF LIBEL—DISCOVERY OF NEW OFFENSES.
   The United States, upon finding evidence of violations of the revenue laws committed by a vessel during the same period as those for which she has already been libeled, may avail themselves of such discovery by amending the libel.

4. SAME—ILLEGAL RELEASE BOND—NEW LIBEL.
   Where a vessel libeled for violation of the revenue laws is released upon a bond of doubtful legality, the United States cannot maintain a second libel for other violations of the revenue laws, committed during the same period as those for which the first libel was filed, without dismissing the first proceeding.

5. SAME—RELEASE BOND—VALIDITY.
   A release bond for a vessel seized for violation of the revenue laws, which contains no condition, and is for double the value of the vessel as if drawn under Rev. St. § 941, is valid, under section 938, as an obligation to pay at least the value of the vessel, since the condition is contained in the statute.

6. SAME—CRIMES—LANDING CHINESE LABORERS.
   In a libel by the United States against a vessel for breach of the revenue laws, an allegation that her master attempted to land Chinese laborers at a port of the United States does not charge a crime.

7. SAME—MATTER PLEADED IN ABATEMENT—PRIOR SEIZURE IN ANOTHER DISTRICT.
   A seizure of a vessel for violations of the revenue laws, and her release on bond, may be pleaded in abatement of a subsequent libel in another district for similar offenses committed during the same period as those for which the first libel was filed.

In Admiralty. Libel by the United States against the steamer Haytian Republic for breach of the revenue laws. Heard on claimant's exceptions to the libel. Exceptions sustained.

John M. Gearin, Sp. Asst. U. S. Atty.
C. A. Dolph, W. H. Gorham, and O. F. Paxton, for claimant.

BELLINGER, District Judge. On May 28, 1893, the steamship Haytian Republic was seized at Seattle, in the district of Washing-

ton, as forfeited to the United States for violations of the revenue laws alleged to have been committed at various times between July 28, 1892, and the date of seizure. Subsequently, the vessel was released on the bond of the claimant, in double the amount of her appraised value. Thereafter, in July last, the vessel was again seized for a number of other alleged violations of the revenue laws, committed during the same period of time covered by the former charges, at dates extending from July, 1892, to January 27, 1893, and including, also, two charges of violations of the same laws, alleged to have been committed since the release from arrest at Seattle, the latter seizure being made in this district.

The claimant filed exceptive allegations to the several articles in the libel and amended libel, relating to alleged offenses committed prior to the arrest and release at Seattle, setting out particularly the proceedings had in the district court for Washington, and submitted with these exceptions a certified transcript of the record of such proceedings. The ground of these exceptions is that the United States, having taken a bond from the claimant in the full appraised value of the vessel on the former arrest, and having released her from such arrest, cannot have recourse again to the vessel, except for offenses committed since such release.

The point is made for the first time in the brief filed since the argument, in support of the libel, that the facts set up in the allegations cannot be raised on exceptions, but are available to the defendant by answer only. In admiralty, exceptive allegations correspond to pleas in abatement and special pleas in bar. A party may set up a single fact in an exceptive allegation, or he may unite the whole, answering as to all the facts, in an answer. Ben. Adm. § 368. The usual course is to set up all matters so relied upon in an answer. The exceptive allegations are, in effect, a special answer. It is immaterial what name is given to them. Courts of admiralty disregard mere technicalities. The circumstances of the case make it important, both to the government and the claimant, that the matters involved in this controversy be speedily determined. I shall not consider whether the facts alleged in an exceptive allegation must be technically within the knowledge of the court, but shall consider the questions presented by the exceptions upon the assumption made by both parties in the argument, that the facts alleged are proper to be considered by the court in the mode in which they are presented.

It is claimed in support of the libel that, when the claimant secured the release of the vessel upon the bond for her appraised value, he took it subject to all existing liens, and cases are cited which abundantly sustain that view. That there is no distinction as to this between cases where the vessel is held for forfeiture, and other cases, is shown in the case of The Langdon Cheves, 2 Mason, 59, where, in a proceeding of condemnation and forfeiture, the vessel was delivered on bail for the appraised value, and after a final decree of condemnation the amount of the appraised value was paid into court. Afterwards, the question arose as to whether

the owner, when the ship was released, took her free from a prior mortgage, which he had given for his own debt; and the court held that he did not take the ship free from this lien; that all principle and authority were against such a claim. Certainly, it would be against all principle to permit the owner of a vessel to be relieved from his own debt,—from a mortgage which he had given. In securing the release of the vessel, he protected the security which he had given, as he was in duty bound to do, and he acted with full knowledge of his own responsibility. The mortgagee was the owner in equity with him, to the extent of his lien in the mortgaged property; and the only thing to be commented upon, in the case, is the fact that the liability of the vessel, after her release, for such mortgage debt, should, under the circumstances, have been a matter of controversy. The owner cannot thus relieve himself from obligations he has incurred by an act which subjects him to a forfeiture of his vessel. It is no hardship that he is made to pay the forfeit, and the debt as well, which he does when he pays the value of his vessel into court, and takes it subject to the debt. In this case, however, the effect of what is attempted is to make the owner liable for the appraised value of the vessel, on account of the forfeiture, and continue the vessel's liability to forfeiture, as before. True, it is said that the continuing liability is for another offense, but this is a mere juggling with words. There can be but one forfeiture, no matter how many offenses there are at the time of the seizure. If the position of the United States is correct, then it may have as many distinct proceedings of condemnation as there are offenses charged in the libel. But, if so, the aggregate result is a single forfeiture. This is the sum of its remedies. A party cannot increase his recovery by the expedient of multiplying suits upon causes proper to be joined in one suit. The position of the government is that the claimant, upon giving bond at Seattle, took the vessel subject to forfeiture, as he might have taken her subject to a lien. But by such assumed taking the owner, as a matter of fact, took nothing, since he could not take what was equally forfeit after the bond as before. Upon such a theory as is relied upon in the libel, the United States may lie by through one proceeding until the owner of a seized vessel gives a bond for her discharge, and then start another like proceeding, to be followed by still another, in a series of suits, as long as the owner may be encouraged to bail the ship from successive arrests. The object of the law in permitting the release of the vessel to the owner is to enable him to save himself from the indirect consequences of the seizure, which may be deeply injurious to him, through no fault of his, without any benefit to the cause of justice, or to the proceedings in court. Ben. Adm. § 447. Good faith will not permit a party to be entrapped upon such an inducement into giving a bond, merely that a second seizure may be made as soon as the first is discharged. That the owner who gives a bond takes his vessel subject to all liens legally attaching to her, does not touch the question. A ground of forfeiture is not a lien, which may be defined to be a debt imposed upon

property. It is a confiscation of the thing itself. It admits of no right remaining in the thing forfeited.

In support of the libel the case of The Bold Buccleugh, 22 Eng. Law & Eq. 62, is cited, as a case where a vessel was libeled in Scotland for a collision, arrested and bailed out, and rearrested in England for the same cause of libel. The case is commented on in Wolf v. Cook, 40 Fed. Rep. 438, where it is stated that the proceeding in Scotland was in personam. This is not material, however. Upon the filing of the second libel, instructions were at once sent to dismiss the first, and the answer to the plea was that there was no longer any suit pending. And, besides this, it frequently happens that a party is permitted to bring a second action upon the same demand in different jurisdictions, but he is not permitted to have more than one recovery, as is attempted, or at least contended for, here. He is not allowed to split his cause of action, although the result aimed at is nothing more than the recovery of several judgments, aggregating, exclusive of costs, no more than the amount justly due. A fortiori, the party will not be permitted, by the expedient of dividing up the grounds of forfeiture, to recover the value of the forfeited property a second time.

I assume that the violations of law charged in this proceeding were not known to the libelant when the seizure complained of in this procedure was made. If so, the libelant may avail itself of this recent knowledge by amending the libel in the other district to include all the causes of action excepted to here.

The point is also made in behalf of the libelant that the bond given in the district court for Washington is not a bond, for the reason that it contains no condition, and was obviously intended to be given in pursuance of Rev. St. § 941, instead of section 938. The former section provides for bonds in proceedings in rem, in causes of admiralty jurisdiction, other than cases of seizure for forfeiture, and provides for a bond in double the value of the property claimed. The fact that the bond may have been prepared with a view to this section, and is larger than required, does not affect its validity, as to the obligation to pay at least that amount. The conditions upon which the obligation in the bond becomes absolute are contained in the statute. If, however, the bond is legally no bond at all, and there is neither the rem nor its substitute, upon which the jurisdiction of the district court for the district of Washington can lay hold, all doubts as to the effect of the pendency of the suit in that court upon this suit might have been removed, without the sacrifice of anything on the part of the libelant, by dismissing such former proceeding. I am of the opinion that the bond in question is in compliance with the statutes, and that upon condemnation in the district court for Washington, if the claimants do not, within the 20 days provided in the statute, pay the appraised value of the vessel into court, with costs, judgment can be granted upon such bond, on motion, without delay.

The allegation in the libel that the master of the vessel brought

Chinese laborers to this port, and attempted to land them, does not charge a crime.

I have had some doubts as to whether the pendency of a suit in a court of the United States for another district can be pleaded in abatement of a suit in this court. The point has not been expressly decided. The opinion is expressed that there is no difference in principle between such a suit and one in the court of another state. 1 Fost. Fed. Pr. § 129. And it has been held in the United States circuit court in Wisconsin that the pendency of an action in a state court of Iowa, where sufficient property had been attached to satisfy the demand, was a ground for the abatement of the suit in the former court. Lawrence v. Remington, 6 Biss. 44. Upon these authorities, I conclude that no jurisdiction exists in a case like this, where there has been a seizure and a release on bond in the court of the other district.

The exceptions are allowed.